IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARVIN BENTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:06-CV-1591-D |
| VS. | § | (Consolidated with |
| | § | Civil Action No. 3:07-CV-0144-D) |
| U.S. ENVIRONMENTAL | § | |
| PROTECTION AGENCY; | § | |
| GINA McCARTHY, Administrator | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Following a jury verdict in favor of plaintiff Marvin Benton ("Benton") on his claim

for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§ 2000e *et seq*., defendant Environmental Protection Agency ("EPA") renews its motion for

judgment as a matter of law under Fed. R. Civ. P. 50(b), or, alternatively, moves for a new

trial under Rule 59(a).  Concluding as a matter of law that the evidence in part supports and

in part does not support the jury's verdict that the EPA retaliated against Benton, and that the

evidence does not support the jury's award of compensatory damages, the court grants in part

and denies in part the EPA's renewed Rule 50(b) motion and concludes that Benton is

entitled to judgment in the sum of $1 for nominal damages.  The court denies the EPA's

alternative motion under Rule 59(a) for a new trial, and it today enters judgment partially in

favor of Benton and partially in favor of the EPA in accordance with this memorandum

opinion and order.

I

Benton has been employed as an attorney with the EPA since May 1987.  In January 2004 and December 2004 Benton filed complaints of race discrimination with the EPA Office of Civil Rights and requested hearings before the Equal Employment Opportunity Commission ("EEOC").  On May 24, 2005 Benton and the EPA entered into a settlement agreement ("Settlement Agreement") that resulted in the dismissal of Benton's discrimination claims.  After the claims were settled, Benton received an official reprimand, a "minimally satisfactory" rating on an annual performance appraisal, and was reassigned from a supervisory position to a staff attorney position.

Benton filed the instant lawsuit, alleging that the EPA had retaliated against him, in violation of Title VII, by (1) issuing to him an official reprimand on October 20, 2005 ("Official Reprimand"); (2) rating him as "minimally satisfactory" on an annual "Performance Appraisal" for 2005 ("2005 Performance Review"); and (3) reassigning him from his position of Branch Chief for the Water/RCRA Enforcement Branch for EPA Region VI to the position of staff attorney, effective February 1, 2006.  Benton also asserted claims under the Whistleblower Protection Act of 1989 ("Whistleblower Protection Act"), 5 U.S.C. § 1211 *et seq*. and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*.

The case was tried to a jury, which returned a verdict in Benton's favor on his Title VII retaliation claim and found that he was entitled to recover $150,000 in compensatory damages.  The jury found in favor of the EPA on Benton's claims under the Whistleblower

Protection Act and the ADEA.  The EPA has renewed its motion for judgment as a matter

of law as to the components of the verdict that favor Benton.  It moves in the alternative for

a new trial.[1]

II

"A motion for judgment as a matter of law 'challenges the legal sufficiency of the

evidence to support the verdict.'"  *Jacobs v. Tapscott*, 516 F.Supp.2d 639, 643 (N.D. Tex.

2007) (Fitzwater, J.) (quoting *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 195 (5th Cir.

2006)), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

> Judgment as a matter of law is appropriate with respect to an
> issue if there is no legally sufficient evidentiary basis for a
> reasonable jury to find for a party on that issue.  This occurs
> when the facts and inferences point so strongly and
> overwhelmingly in the movant's favor that reasonable jurors
> could not reach a contrary verdict.  In considering a Rule 50
> motion, the court must review all of the evidence in the record,
> drawing all reasonable inferences in favor of the nonmoving
> party; the court may not make credibility determinations or
> weigh the evidence, as those are jury functions.  In reviewing
> the record as a whole, the court must disregard all evidence
> favorable to the moving party that the jury is not required to
> believe.  That is, the court should give credence to the evidence
> favoring the nonmovant as well as that evidence supporting the
> moving party that is uncontradicted and unimpeached, at least
> to the extent that that evidence comes from disinterested
> witnesses.

*Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004) (brackets,

---

[1]The court deferred entering a judgment following the jury verdict given its concerns about whether all or any part of the verdict could stand.  These motions are post-verdict motions filed before the entry of judgment.

citations, and internal quotation marks omitted).  The court will "'uphold a jury verdict

unless the facts and inferences point so strongly and so overwhelmingly in favor of one party

that reasonable [jurors] could not arrive at any verdict to the contrary.'" *Goodner v. Hyundai*

*Motor Co.*, 650 F.3d 1034, 1039 (5th Cir. 2011) (quoting *Cousin v. Trans Union Corp.*, 246

F.3d 359, 366 (5th Cir. 2001)).  "In other words, the 'jury verdict must be upheld unless

there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did.'"

*Id.* at 1039-40 (quoting *Foradori v. Harris*, 523 F.3d 477, 495 (5th Cir. 2008)).

III

Title VII prohibits an employer from taking an adverse employment action against

an employee because he has filed an employment discrimination charge.  *See* 42 U.S.C.

§ 2000e-3(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006).  "To

establish a prima facie case of retaliation, the plaintiff must establish that: (1) he participated

in an activity protected by Title VII; (2) his employer took an adverse employment action

against him; and (3) a causal connection exists between the protected activity and the adverse

employment action."  *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007)

(per curiam) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir.

2003)).[2]  The EPA moves for judgment as a matter of law on the second and third elements.

---

[2]When analyzing Title VII retaliation cases that have not reached a jury, courts apply
the burden-shifting framework detailed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792
(1973).  Once the case has been fully tried, however, this framework becomes unimportant,
and a court "need not . . . parse the evidence into discrete segments corresponding to a prima
facie case, an articulation of a legitimate, [non-retaliatory] reason for the employer's
decision, and a showing of pretext."  *Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218

IV

The EPA argues that it is entitled to judgment as a matter of law because none of the alleged actions taken against Benton constitutes an "adverse employment action."

A

"The antiretaliation provision [of Title VII] seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms." *Burlington N.*, 548 U.S. at 68 (citation omitted).  To constitute prohibited retaliation, an employment action must be "materially adverse," meaning an action that might "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Id.* (citations omitted).  "The purpose of this objective standard is 'to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (quoting *Burlington N.*, 548 U.S. at 68). Although "arguably adverse employment actions must be viewed in context," *McCoy*, 492 F.3d at 560, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N.*, 548 U.S. at 68.  In other words, "Title VII . . . does not set forth 'a general civility code for the American workplace.'" *Id.* (quoting

---

F.3d 392, 402 (5th Cir. 2000).  The question instead becomes "whether the record contains sufficient evidence to support the jury's ultimate findings." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 476 (5th Cir. 2005) (citation and internal quotation marks omitted).

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

B

The EPA argues that none of the three adverse actions on which Benton relies—the Official Reprimand, the minimally satisfactory rating on the 2005 Performance Review, or the reassignment to the position of staff attorney—qualifies as an "adverse employment action" in the retaliation context.  It contends that the Official Reprimand cannot qualify because Benton did not prove that he suffered any serious negative consequences as a result of the reprimand: the reprimand remained in his employment file for only two years, was kept private from his colleagues, and there was no evidence that the reprimand resulted in lower pay or had any effect on his job duties.  The EPA maintains that the minimally satisfactory rating on the 2005 Performance Review cannot constitute an adverse employment action because there is no evidence that this performance review negatively affected Benton's pay grade or lowered his salary.  Finally, the EPA contends the reassignment to the position of staff attorney does not constitute an adverse employment action because Benton's pay grade and annual salary did not change, and he presented no evidence that he suffered a diminution in prestige or change in standing among his coworkers or that his new position was less interesting and provided no opportunity for advancement.

Benton responds that the Official Reprimand, 2005 Performance Review, and involuntary reassignment from supervisory general attorney to staff attorney had definite

negative consequences on his employment status and career and thus constituted a demotion. He maintains that, as a supervisory general attorney, he was responsible for supervising and managing a legal staff of approximately 14 to 15 attorneys, paralegals, and a secretary, and that he held the position of Branch Chief for the Water/RCRA Branch in Region VI. He contends that his involuntary reassignment to the Superfund legal branch as a staff attorney stripped him of his supervisory responsibilities; ended his "career-enhancing" responsibilities that included attending meetings and consulting with members of the Senior Executive Service at EPA Region VI, senior managers at EPA headquarters, and other federal departments and agencies; stripped him of his ability to help develop and make enforcement policy for the EPA; stripped him of responsibility for budget management and succession planning by mentoring and developing younger attorneys as they progressed in their careers; and required him to move out of his private office and into a cubicle in open space. Benton argues that the "demotion" to a staff attorney "was not commensurate with career enhancement, but instead this demotion severely damaged and weakened [his] career potential." P. Br. 4.

The EPA replies that, although there is no dispute that Benton no longer supervised attorneys after his move to the Superfund branch, he has cited no evidence demonstrating that the reassignment cost him the ability to perform other functions, such as participating in important meetings, helping develop Region VI policy, or mentoring younger attorneys.

C

Benton does not argue that either the Official Reprimand or the minimally satisfactory

rating on his 2005 Performance Review was an adverse employment action.  He does,

however, contend that his "demotion" to the staff attorney position constituted an adverse

employment action.  The court therefore turns to this basis for his Title VII retaliation claim.

The Fifth Circuit has held, for purposes of a claim under 42 U.S.C. § 1983, that a

transfer that serves as a demotion qualifies as an adverse employment action.  *See Sharp v.*

*City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999).  "To be equivalent to a demotion, a

transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new

position proves objectively worse—such as being less prestigious or less interesting or

providing less room for advancement."  *Id*. (citing *Forsyth v. City of Dallas*, 91 F.3d 769,

774 (5th Cir. 1996)); *accord Alvarado v. Tex. Rangers*, 492 F.3d 605, 612-13 (5th Cir.

2007).  "Whether a transfer is objectively worse is a question of fact."  *Fisher v. Dallas*

*Cnty.*, ___ F.R.D. ___, 2014 WL 1516178, at *7 (N.D. Tex. Apr. 18, 2014) (Fitzwater, C.J.)

(citing *Sharp*, 164 F.3d at 933).

It is undisputed that, prior to Benton's reassignment, he held the position of Branch

Chief for the Water/RCRA Enforcement Branch for EPA Region VI, and that, in this

position, he supervised a staff of approximately fifteen, consisting of attorneys, paralegals,

and a secretary.  It is also undisputed that, after Benton's February 2006 reassignment to the

position of staff attorney for the Superfund legal branch, he no longer supervised other EPA

employees. The jury could reasonably have found that an involuntary reassignment resulting in the elimination of supervisory responsibilities could dissuade a reasonable worker from asserting a charge of discrimination, and that the involuntary reassignment was an adverse employment action. Accordingly, the EPA's Rule 50(b) motion on this first ground is denied.

V

The EPA next moves for judgment as a matter of law on the issue of causation.

A

The third element of a Title VII retaliation claim is that a causal connection exists between the protected activity and the adverse employment action. *McCoy*, 492 F.3d at 557. To satisfy this element, Benton must prove that his "protected activity was a but-for cause of the alleged adverse action by [the EPA]." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S.Ct. 2517, 2534 (2013). In other words, this claim "require[s] proof that the desire to retaliate was the but-for cause of the challenged employment action." *Id.* at 2528. Benton can "discharge this burden by presenting direct evidence of retaliation or by presenting circumstantial evidence of retaliation." *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 547 Fed. Appx. 484, 488 (5th Cir. 2013) (per curiam). He can rely on evidence that the reasons given for taking the alleged adverse action are pretextual. "An employee establishes pretext by showing that the adverse action would not have occurred 'but for' the employer's retaliatory reason for the action." *Hague v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, ___ Fed. Appx. ___, 2014 WL 1257944, at *4 (5th Cir. Mar. 28, 2014) (citing

*Nassar*, 133 S.Ct. at 2533-34).  A plaintiff may demonstrate pretext "by showing that the employer's proffered explanation is unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citation and internal quotation marks omitted).  "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

B

The EPA contends that Benton's retaliation claim fails as a matter of law because he failed to prove that, "but for" his protected activity, he would not have been subjected to the Official Reprimand, minimally successful rating on the 2005 Performance Review, and reassignment.  It maintains that the jury could not reasonably have found "but-for" causation because Benton failed to prove that his immediate supervisor, Suzanne Murray ("Murray"), had specific knowledge of his January 2004 EEOC complaint, and, without such knowledge, it makes no sense to believe that she retaliated against him for his protected activity; the temporal proximity between Benton's January 2004 EEOC complaint and each of the alleged adverse actions is far greater than the time period permitted by the Fifth Circuit; and Benton did not establish that his protected activity was the "but for" cause of each alleged employment action because he failed to provide any evidence that he would not have been reprimanded, received the minimally satisfactory performance review, or been reassigned in the absence of his protected activity.

C

The court now applies the controlling standard, *see supra* § II, and determines as a matter of law whether there was sufficient evidence for a reasonable jury to have found in Benton's favor on the element of causation.

Murray testified that she first learned that Benton had filed an EEOC complaint in July 2005, when Cheryl Boyd ("Boyd") complained that Benton had retaliated against her because she would not testify in his EEOC case.  The jury could reasonably have found from this testimony that, as of July 2005, Murray knew that Benton had engaged in protected activity. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003) ("We have determined that, in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." (citations omitted)); *see also Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").  Before Murray learned that Benton had engaged in a protected activity, she had never negatively reviewed Benton's job performance. Benton testified that, in mid-2005, when the EPA implemented its new system of rating employees using critical job elements, Murray met with him for a "mid-year" review and did not provide any negative comments regarding his job performance.  After Murray learned about Benton's EEOC case, however, she officially reprimanded him within

approximately three months, and, just over three months after that, gave him a "minimally

satisfactory" performance rating and involuntarily reassigned him.[3]

A plaintiff alleging retaliation can satisfy the causal connection element by showing

"[c]lose timing between an employee's protected activity and an adverse action against him."

*McCoy*, 492 F.3d at 562.  Such temporal proximity must generally be "very close."  *Clark*

*Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citations omitted).  For example,

"a time lapse of up to four months" may be sufficiently close, *Evans v. City of Houston*, 246

F.3d 344, 354 (5th Cir. 2001), while a five-month lapse is not close enough without other

evidence of retaliation, *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 472 (5th Cir.

2002).  Here, only about three months elapsed between when Murray became aware that

Benton had engaged in protected activity and the first of a series of actions that culminated

in his being reassigned.

Benton does not rely on timing alone, however, to establish causation.[4]  The jury also

---

[3]Benton testified that "previously, [he had] never received the kind of rating that [he] got from Ms. Murray in [his] entire federal career," spanning over 30 years. Tr. 3:121. In his new position, Benton received an "exceeds expectations" rating on his annual performance review for 2006. Although this performance review related to a different position with presumably different "expectations," the jury could take this fact into account when weighing the evidence concerning Murray's evaluation of Benton's performance.

[4]Benton maintains that he "has never contended or argued before this Court that his Title VII claims of employer retaliation [are] based upon temporal proximity alone." P. Br. 8.  He relies on *Mooney v. Lafayette County School District*, 538 Fed. Appx. 447, 454 (5th Cir. 2013), to argue that the "suspicious chronology of events" after he entered into the Settlement Agreement and the "cumulative effect of all three" of the allegedly adverse employment actions "was highly suspicious and more likely a causal link to Defendant's employer retaliation of Plaintiff." P. Br. 8-9.  In *Mooney* the Fifth Circuit held that the

heard sufficient evidence of pretext.  At trial, Murray testified about four non-retaliatory

reasons for the EPA's decision to reassign Benton to the Superfund legal branch: he had

received a minimally satisfactory rating in his 2005 Performance Review, and, if he

continued in his current position, he would have to be put on a performance assistance plan;

his performance was unsatisfactory; he was not treating persons in his group with respect;

and there was a planned reorganization in the office, with Benton's position as Branch Chief

being split into two positions.[5]  Benton introduced sufficient evidence for the jury to have

reasonably found that these proffered reasons for reassigning him were pretextual, and that

the EPA's desire to retaliate was the but-for cause of his being reassigned.

For example, in the 2005 Performance Review, Murray focused on Benton's lack of

initiative, failure to participate within the agency on a national level, and failure to provide

sound legal advice.  Four of Benton's program clients, however, testified that at no time

during 2005 had they complained to Murray or Division Director John Blevins about

Benton's work performance or stated that they had a problem working with Benton.  In

---

plaintiff could rely on a "chronology of events from which retaliation may plausibly be inferred" to establish a prima facie case of First Amendment retaliation under 42 U.S.C. § 1983. *Mooney*, 538 Fed. Appx. at 454.  The court need not decide whether Benton can rely on a "suspicious chronology of events" in this Title VII retaliation case—which, unlike a First Amendment retaliation case, requires "but-for" causation—because, in addition to his evidence of suspicious timing, Benton presented evidence at trial from which a reasonable jury could conclude that Murray's reasons for Benton's reassignment were pretextual.

[5]The EPA contends that Benton was reassigned because his job was being split into two positions, but the jury could reasonably have found that there was no reason why Benton, having served as chief over both the RCRA and water branches, could not have continued in a supervisory position over one of the branches once the position was split.

addition, Patrick Rankin, an EPA attorney, testified that the legal conclusion Benton reached

in his controversial "Waters of the United States" memorandum was in fact legally correct.

Regarding Murray's position that Benton was not treating persons in his group with respect,

several trial witnesses testified that they had never heard Benton raise his voice to anyone,

physically threaten anyone, act abrasively, treat anyone rudely, or conduct himself in an

unprofessional manner.  Benton's secretary, Lupe Ayala, testified that Benton was the "best

supervisor," Tr. 2:174, and that "[i]n front of [her, Benton was] always nice to everybody"

and was "very respectful," *id.* at 2:175.  Lorraine Dixon, an attorney who worked under

Benton's supervision, testified that she never saw Benton treat people in a belittling way, act

discourteously, or treat people inappropriately, and that Benton always conducted himself

in a professional manner.  Based on this evidence, the jury could reasonably have

disbelieved Murray's testimony regarding her reasons for reassigning Benton and have found

that the reasons Murray gave for Benton's reassignment were pretextual.

In sum, the evidence introduced at trial was sufficient for the jury reasonably to have

found but-for causation.  The jury could reasonably have found that Murray's proffered

reasons for reassigning Benton were not true.  In particular, taking into account the evidence

that Benton had not received a negative performance review before Murray learned that he

had filed an EEOC complaint, and that he has not received a negative performance review

since his reassignment, a reasonable jury could have found that the proffered reasons for

Benton's involuntary reassignment were pretextual, and that the but-for cause of this adverse

employment action was retaliation for filing charges of discrimination with the EEOC.

Accordingly, the court denies this basis of the EPA's motion for judgment as a matter of law.

VI

A

The EPA maintains that Benton failed to present any evidence to support the jury's

award of $150,000 in compensatory damages, and that it is entitled to judgment as a matter

of law on Benton's retaliation claim.  Benton responds that the jury could rely on its own

common sense in assessing the demeanor and credibility of the witnesses and in assessing

the pain and suffering, humiliation, embarrassment, and loss of enjoyment of life that he has

endured since the acts of retaliation in 2005.  He also contends that the jury could rely on the

documentary evidence of his emotional distress and humiliation that was contained in a

"Report of Investigation" that the EPA authored.

B

The Civil Rights Act of 1991 provides that a plaintiff who proves a Title VII claim

can recover compensatory damages.  Compensatory damages for emotional distress,

however, must "'be supported by competent evidence concerning the injury.'"  *Giles v. Gen.*

*Elec. Co.*, 245 F.3d 474, 487 (5th Cir. 2001) (quoting *Brady v. Fort Bend Cnty.*, 145 F.3d

691, 718 (5th Cir. 1998)); *see also Salinas v. O'Neill*, 286 F.3d 827, 830 (5th Cir. 2002)

("Any award for emotional injury greater than nominal damages must be supported by

evidence of the character and severity of the injury to the plaintiff's emotional well-being.").

"Compensatory damages for emotional distress and other intangible injuries are not

-15-

presumed from the mere violation of constitutional or statutory rights, but require specific

individualized proof, including how [the] Plaintiff was personally affected by the

discriminatory conduct and the nature and extent of the harm." *DeCorte v. Jordan*, 497 F.3d

433, 442 (5th Cir. 2007) (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 416-17 (5th

Cir. 1998)); *see also Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 239 (5th Cir.

2001) ("[E]motional harm will not be presumed simply because the plaintiff is a victim of

discrimination.  To demonstrate an actual . . . injury, the existence, nature, and severity of

emotional harm must be proved." (brackets, citations, and internal quotation marks omitted)).

> There are two requirements to prove emotional distress, the first
> of which is specificity with respect to the alleged injury[.]
> There must be a specific discernable injury to the claimant's
> emotional state, proven with evidence regarding the nature and
> extent of the harm.  Hurt feelings, anger and frustration are part
> of life and are not the types of harm that could support a mental
> anguish award. . . . Second, we require more than vague
> allegations to establish existence of the injury.  Because
> emotional distress is fraught with vagueness and speculation,
> and is easily susceptible to fictitious and trivial claims, we must
> scrupulously analyze an award of compensatory damages for a
> claim of emotional distress predicated exclusively on the
> plaintiff's testimony.

*Giles*, 245 F.3d at 488 (brackets, ellipses, citations, and internal quotation marks omitted).

Benton did not satisfy these standards.  The record is devoid of *any* evidence with

respect to Benton's alleged emotional distress.  For example, there is no medical evidence,

no testimony from family members or coworkers, and no evidence of physical manifestations

of distress.  Nor did Benton himself testify concerning any emotional damages.  Benton

argues in his response brief that "[t]here was also in the trial record submitted documentary

-16-

evidence . . . in which Plaintiff referred to the emotional distress and humiliation he had endured." P. Br. 24.  The cited evidence, however, merely requests damages for emotional distress.  It does nothing to enable a reasonable jury to find that Benton in fact suffered the types of injuries alleged (pain, suffering, and humiliation) or to explain the nature and extent of the harm.  *See DeCorte*, 497 F.3d at 442.

Although the jury could reasonably have found that the EPA retaliated against Benton by involuntarily reassigning him, this is insufficient of itself to prove damages.  *See id.*; *Flowers*, 247 F.3d at 239.  To recover more than nominal damages, Benton was required to present evidence of "[t]he existence, nature, and severity of emotional harm" stemming from the retaliation.  *See Flowers*, 247 F.3d at 239.  Benton simply failed to introduce *any* evidence that would have enabled a reasonable jury to award compensatory damages.

C

Because the required evidence was not presented at trial, the court concludes as a matter of law that Benton is only entitled to recover nominal damages in the sum of $1.  A plaintiff who establishes a violation of Title VII but fails to prove emotional distress or other actual damages can recover nominal damages.  *See Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 941 (5th Cir. 1996) (vacating Title VII emotional distress award and remanding to district court with instructions to award nominal damages), *overruled on other grounds by Williams v. Wal-Mart Stores, Inc.*, 182 F.3d 333 (5th Cir. 1999) (en banc) (per curiam); *Jones v. White*, 2006 WL 3358646, at *5 (S.D. Tex. Nov. 17, 2006) ("Courts award nominal damages in civil rights actions brought under 42 U.S.C. § 1981 or § 1983 or under

employment discrimination statutes when the plaintiff has proven a civil rights deprivation but cannot show actual damages." (citing cases)); *Hines v. Grand Casino of La., L.L.C.—Tunica-Biloxi Indians*, 358 F.Supp.2d 533, 548 (W.D. La. 2005) ("More than a 'nominal' award for emotional damages in a Title VII context must 'be supported by competent evidence concerning the injury.'" (quoting *Patterson*, 90 F.3d at 937-38)); *Jimenez v. Paw-Paw's Camper City, Inc.*, 2002 WL 257691, at *6 (E.D. La. Feb. 22, 2002) ("Thus, the Fifth Circuit has held that a plaintiff who proves a violation either of his constitutional rights under Section 1981 or of his statutory rights under Title VII, but no actual injury, is entitled to recover at least nominal damages." (citing *Patterson*, 90 F.3d at 940, 941)).  In this case, the jury found that the EPA retaliated against Benton, in violation of Title VII, but its award of compensatory damages was made in a complete absence of supporting evidence.  The court therefore holds that Benton is entitled to recover nominal damages in the amount of $1.  *See Patterson*, 90 F.3d at 941.

\*    \*    \*

For the foregoing reasons, the court grants in part and denies in part the EPA's renewed Rule 50(b) motion for judgment as a matter of law, concludes that Benton is entitled to judgment in the sum of $1 for nominal damages, and denies the EPA's Rule 59(a) motion for a new trial.[6]  The court today enters judgment partially in favor of Benton and partially

---

[6]The EPA requests that, "[i]n the event [the court] does not see fit to grant Defendant's motion for judgment as a matter of law, Defendant respectfully asks the Court for a ruling granting a new trial under Rule 59(a) to remedy the patently unreliable verdict in this case." D. Br. 17.  In light of the court's decision and the reasoning on which it is based, it declines

-18-

in favor of the EPA in accordance with this memorandum opinion and order.[7]

   **SO ORDERED.**

   June 24, 2014.

                                    _____
                                    SIDNEY A. FITZWATER
                                    CHIEF JUDGE

---

in its discretion to grant a new trial under Rule 59(a).

   [7]Benton may apply for an award of attorney's fees, related nontaxable expenses, and taxable costs under the procedures, and in accordance with the deadlines, prescribed by Rule 54(d). The court suggests no view regarding whether Benton is or is not entitled to recover any particular form of relief other than the taxable costs that the court awards in today's judgment.