IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARVIN BENTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:06-CV-1591-D |
| VS. | § | (Consolidated with |
| | § | Civil Action No. 3:07-CV-0144-D) |
| U.S. ENVIRONMENTAL | § | |
| PROTECTION AGENCY; | § | |
| GINA McCARTHY, Administrator, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Following a jury trial, plaintiff Marvin Benton ("Benton") has recovered a judgment against defendant Environmental Protection Agency ("EPA") for $1 in nominal damages on his claim for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Benton moves for an award of $37,000 in attorney's fees and an estimated $256.00 in nontaxable expenses, and he moves under Fed. R. Civ. P. 59(a) for a new trial. For the reasons that follow, the court awards Benton $19,346.00 in attorney's fees and $267.82 in nontaxable expenses, and it denies his motion for a new trial.

I

Benton sued the EPA alleging a Title VII retaliation claim based on three alleged acts of retaliation. He also asserted claims under the Whistleblower Protection Act of 1989 ("Whistleblower Protection Act"), 5 U.S.C. § 1211 *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* At trial, the jury returned a

verdict in Benton's favor on his Title VII retaliation claim, finding that he was entitled to the sum of $150,000 in compensatory damages. The jury found in the EPA's favor on Benton's Whistleblower Protection Act and ADEA claims.

After the verdict, the EPA moved for judgment as a matter of law under Rule 50(b), or, alternatively, for a new trial. The court granted in part and denied in part the motion for judgment as a matter of law, and it denied the alternative motion for a new trial.[1] The court held, in pertinent part, that Benton was only entitled to recover nominal damages in the sum of $1 because he had "failed to introduce *any* evidence that would have enabled a reasonable jury to award compensatory damages." *Benton v. EPA*, 2014 WL 2862309, at *8 (N.D. Tex. June 24, 2014) (Fitzwater, C.J.) ("*Benton I*"), *appeal docketed*, No. 14-10821 (5th Cir. July 24, 2014); *see id.* at *8-9.

Benton now moves for an award of $37,000 in attorney's fees and $256.00[2] in

---

[1]In denying the alternative motion for a new trial the court explained:

> The EPA requests that, "[i]n the event [the court] does not see fit to grant Defendant's motion for judgment as a matter of law, Defendant respectfully asks the Court for a ruling granting a new trial under Rule 59(a) to remedy the patently unreliable verdict in this case." D. Br. 17. In light of the court's decision and the reasoning on which it is based, it declines in its discretion to grant a new trial under Rule 59(a).

*Benton v. EPA*, 2014 WL 2862309, at *9 n.6 (N.D. Tex. June 24, 2014) (Fitzwater, C.J.) (brackets in original), *appeal docketed*, No. 14-10821 (5th Cir. July 24, 2014).

[2]Benton requests $131.00 in certified return mailing costs and $125.00 in PACER charges in his motion. His supporting documentation and supplemental briefs request different amounts.

nontaxable expenses, and for a new trial.  The EPA opposes part of Benton's motion for attorney's fees, and it opposes his motion for a new trial.

## II

The court turns first to Benton's motion for a new trial.

## A

Benton contends that he is entitled to a new trial because the verdict awarding him damages is permissible in light of the overwhelming evidence of the EPA's liability regarding acts of retaliation, and because the eight-hour time restriction that the court imposed on each party for the presentation of evidence prevented him from sufficiently developing his ADEA, Whistleblower Protection Act, and Title VII damage claims.

The EPA responds that the court should summarily deny Benton's motion because it was well within the court's discretion to set time limits for each party's presentation of evidence, Benton knew of the time limits in advance of trial and had time to plan accordingly, and even after the court granted Benton additional time at trial, he failed to present any evidence of damages.

## B

The court "'has discretion to grant a new trial under Rule 59(a) of the Federal Rules of Civil Procedure when it is necessary to do so to prevent an injustice.'"  *Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 1867292, at *9 (N.D. Tex. Aug. 5, 2005) (Fitzwater, J.) (quoting *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 774 (5th Cir. 1995)), *aff'd*, 480 F.3d 377 (5th Cir. 2007).  A new trial may be granted "for any reason

for which a new trial has heretofore been granted in an action at law in federal court[.]" Rule 59(a)(1). Rule 59(a) "confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985). For example, a new trial may be granted if the court concludes that the verdict is against the weight of the evidence, that the trial was unfair, or that prejudicial error was committed in the course of the trial. *See id.* at 613.

The court denies Benton's motion. Benton is seeking a new trial based on the premise that his failure to present the necessary evidence to support more than a $1 award of nominal damages—i.e., to support the award of $150,000 in compensatory damages that the jury made—was the result of the time restriction that the court imposed on the presentation of the evidence. But Benton knew as of the pretrial conference—which was conducted four days before the trial commenced—that he and the EPA would have eight hours apiece to present his or its evidence.[3] He therefore had ample advance notice and sufficient time to prepare for a trial in which this time limit would be imposed. In his motion, he has presented no specific reason why he could not have introduced the necessary evidence during the time

---

[3]The eight hours included the time that the parties expended presenting their own witnesses on direct and redirect and cross-examining the other party's witnesses on cross and re-cross. The eight hours were in addition to the time allocated to the parties for their parts of the examination of veniremembers, opening statements, and closing arguments. Such a trial, from start to finish, is a four-day trial by the time the jury retires to deliberate. In the Joint Pretrial Order, Benton estimated "that it [would] take 4-5 days to complete this trial." Jt. Pretrial Order at 7. The time limit imposed was therefore within the range of Benton's own estimate.

allotted.  In fact, as Benton approached the eight-hour limit on the third day of trial, he requested and was granted 30 additional minutes of time.  But he neither argued that he needed this additional time to prove his damages nor used it for this purpose.  He could easily have presented within 30 minutes the necessary evidence to justify an award of compensatory damages, assuming he had any such evidence.  *See Benton I*, 2014 WL 2862309, at *8 (discussing the requirements for proving emotional distress).

In fact, Benton did not merely fail to sufficiently develop evidence of emotional distress, "[t]he record [was] devoid of *any* evidence with respect to Benton's alleged emotional distress."  *Id.*  In his conclusory motion for a new trial, Benton points to no specific evidence that he would have presented, witness he would have called, or argument he would have made had he had more time.  Instead, he asks the court to speculate that, because he prevailed on his Title VII claim "due to both the quantity and quality of witness testimony," P. Br. 2, he will prevail on his ADEA, Whistleblower Protection Act, and Title VII damages claims if he is granted a new trial.  The court declines to grant a new trial based on unfounded speculation that the result would be different were Benton allocated more time to present his case to the jury.

Accordingly, Benton's motion for a new trial is denied.

III

The court turns next to Benton's motion for attorney's fees.

A

When a plaintiff prevails on a Title VII claim, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs[.]" 42 U.S.C. § 2000e-(5)(k).

> The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

*Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379-80 (5th Cir. 2010) (some citations omitted).[4]

There is a strong presumption that the lodestar is adequate to induce attorneys to undertake representation in meritorious civil rights cases. *See Perdue v. Kenny A.*, 559 U.S. 542, 553-

---

[4]The *Johnson* factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. The Supreme Court has barred any use of the sixth factor. *Merrick v. Scott*, 2011 WL 1938188, at *1 n.3 (N.D. Tex. May 20, 2011) (Fitzwater, C.J.) (quoting *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 193 (5th Cir. 1999)). And the second factor generally cannot be used as a ground for enhancing the award. *Perdue v. Kenny A.*, 559 U.S. 542, 553 (2010).

54 (2010).  The applicant bears the burden of substantiating both the requested hours and the hourly rates.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

B

To determine the lodestar, the court first considers whether the requested hourly rates are reasonable.

1

"The hourly rates to be used in the lodestar calculation are determined by 'the prevailing market rates in the relevant community.'"  *Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 6789456, at *15 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007).  As the fee applicant, Benton "bears the burden of demonstrating 'that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Id.* (quoting *Blum*, 465 U.S. at 895 n.11).

Benton seeks to recover fees at the hourly rate of $300 for attorney Vernon A. McInnis, Esq. ("McInnis") and $100 per hour for attorney Richard B. Tanner, Esq. ("Tanner").[5]  McInnis avers that he has been a licensed attorney since 1977 and has tried many civil lawsuits and contested cases, including suits involving labor and employment law. Tanner avers that he graduated from law school in 1969 and has been practicing as a licensed attorney in the state of Texas since 1973.  Tanner has also tried many civil lawsuits and

---

[5]Benton does not request fees for his own services.  Although he is an attorney, he was proceeding *pro se* to the extent he rendered services on his own behalf.

contested cases, including suits involving labor and employment law.  Tanner's standard hourly rate is $300, but he agreed to represent Benton at an hourly rate of $100 because Benton is an active member of the United States military.

The EPA argues for a downward adjustment of the lodestar amount based on the *Johnson* factors, but does not contend that the hourly rates charged by McInnis or Tanner are unreasonable.

2

"[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).  This court found in 2013 that an hourly rate of $400 was reasonable for a civil rights attorney who had been licensed since 1974 and who had "significant experience and ability." *Inclusive Cmtys. Project, Inc. v. Tex. Dep't. of Housing & Cmty. Affairs*, 2013 WL 598390, at *5-6 (N.D. Tex. Feb. 15, 2013) (Fitzwater, C.J.), *rev'd on other grounds*, 747 F.3d 275 (5th Cir. 2014), *cert. granted*, 82 U.S.L.W. 3686 (U.S. May 13, 2014) (U.S. Oct. 2, 2014) (No. 13-1371).  Based on the court's expertise in determining reasonable attorney's fees, it finds based on McInnis's and Tanner's levels of experience and the nature of this litigation that their requested hourly rates of $300 and $100, respectively, are reasonable.

C

The court now determines the number of hours that were reasonably expended by Benton's counsel.

1

Benton seeks fees for 55.05 hours of time expended by McInnis and $21,000 for the legal work performed by Tanner, although he fails to specify the number of hours that he is claiming for Tanner's services.  Benton, a licensed attorney, does not seek fees for his own services.  *See supra* note 5.  Benton contends, however, that his active involvement in conducting legal research and discovery, helping draft pleadings, and assisting in the trial of his case reduced the hours that McInnis and Tanner expended, and that his attorney fees would otherwise have unquestionably been substantially higher.  Based on the court's review of the bills for Tanner's services, it finds supporting documentation for 111.2 hours of attorney time.  The EPA does not contest the reasonableness of the amount of time that McInnis or Tanner expended on Benton's case, or the evidence on which this requested time is based.

2

The EPA's challenge to Benton's attorney's fees request is based instead on the premise that the fee award should be reduced under the eighth *Johnson* factor because Benton succeeded on only one of his five "distinct employment discrimination claims."  D. Br. 4.[6]  The contention that Benton's fee request should be reduced because he succeeded

---

[6]The EPA argues that Benton proceeded to trial on five distinct employment discrimination claims: three separate incidents of alleged improper Title VII retaliation (centered on a written reprimand, a performance review that fell below Benton's expectations, and his reassignment out of a supervisory position); an age discrimination claim under the ADEA; and an action under the Whistleblower Protection Act.  D. Br. 4.

on only one of his Title VII retaliation claims (and not under the ADEA and the

Whistleblower Protection Act) is properly addressed as part of the lodestar calculation, not

as a reduction to the lodestar under the *Johnson* factors.

In *Hensley* the Supreme Court stated:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories.  In such a suit, even where the claims are brought against the same defendant[,] . . . counsel's work on one claim will be unrelated to his work on another claim.  Accordingly, . . . these unrelated claims [must] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

*Hensley*, 461 U.S. at 434-35; *see also City of Burlington v. Dague*, 505 U.S. 557, 565 (1992)

("[T]he statutory language limiting fees to prevailing . . . parties bars a prevailing plaintiff

from recovering fees relating to claims on which he lost[.]").  By contrast, where a plaintiff's

claims for relief

> involve a common core of facts or will be based on related legal theories[, m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 435.

The court must therefore decide as a threshold matter whether Benton's ADEA or

Whistleblower Protection Act claim is distinct from his successful Title VII retaliation claim

and must therefore be excluded from the lodestar calculation.  If the claim in question is not

-10-

distinct—that is, it involves a common core of facts or is based on a related legal theory—"[this] court's focus should shift to the results obtained and adjust the lodestar accordingly," although it may be possible to identify specific hours that should be eliminated. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 n.13 (5th Cir. 1995) (citing *Hensley*, 461 U.S. at 436-37). The "relatedness inquiry . . . turns on the facts and claims of the specific case." *Williams v. Shinseki*, 2013 WL 1875055, at *4 (N.D. Tex. May 6, 2013) (Fitzwater, C.J.).

The court concludes that Benton's successful Title VII retaliation claim is unrelated to either his ADEA claim (alleging discrimination based on Benton's age) or his Whistleblower Protection Act claim (alleging that the EPA took adverse action after Benton made protected disclosures about government waste, fraud, and abuse). Accordingly, Benton cannot recover for time spent on his ADEA or Whistleblower Protection Act claim.[7]

Because the time expended on Benton's ADEA or Whistleblower Protection Act claim is not recoverable, to calculate the lodestar, the court must determine how much time Benton's counsel expended on these claims and reduce the number of hours reasonably

---

[7]To the extent the EPA argues that Benton brought three separate retaliation claims under Title VII and that he was only successful on one, the court concludes that the three grounds of his Title VII retaliation claim are related. The court need not therefore decide whether, under its decision in *Benton I*, Benton was unsuccessful on two grounds of the three grounds of his Title VII retaliation claim. *See Benton I*, 2014 WL 2862309, at *4 (addressing Benton's contention that his "demotion" to staff attorney position constituted adverse employment action after noting that Benton did not argue that either the Official Reprimand or the minimally satisfactory rating on his 2005 Performance Review was an adverse employment action).

expended accordingly. The court cannot determine from its review of Benton's billing records precisely how much time his attorneys expended on the ADEA and Whistleblower Protection Act claims. Nor does Benton attempt to specify what portion of the attorneys' time was expended on these claims. Accordingly, because Benton has the burden of proving the number of hours reasonably expended, and he has not met this burden, the court has used its best judgment based on the record before it to conclude that 30% of the fees involved neither a common core of facts nor a legal theory related to Benton's Title VII retaliation claim, and it reduces the number of hours by this percentage. *See id.* at *4-5 (reducing fee award by 25% to take into effect the distinct nature of plaintiff's unsuccessful ADA claim and successful Title VII retaliation claim while recognizing the relatedness of Title VII retaliation claim to unsuccessful Title VII discrimination claim). In doing so, the court notes that its decision need not be precise in these circumstances. *See Wesley v. Yellow Transp., Inc.*, 2010 WL 4959939, at *1 n.2 (N.D. Tex. Dec. 6, 2010) (Fitzwater, C.J.) (denying motion for reconsideration challenging 50% reduction in fee request based on "the varied degrees of success that plaintiffs achieved," and holding that "[t]he calculation of attorney's fees need not be precise in these circumstances").

D

The court now considers whether the lodestar fee should be adjusted downward under *Johnson*.

1

The EPA maintains that the court should adjust the lodestar fee downward 75% because of Benton's lack of monetary success and the fact that he prevailed on only one of his claims. The EPA focuses only on the eighth *Johnson* factor: the amount involved and the results obtained. It maintains that although Benton may be entitled to *some* attorney's fees, his request should be reduced significantly due to his limited success at trial. The EPA reasons that Benton's recovery of only $1 in nominal damages, contrasted with the statutory cap of $300,000 for compensatory damages, and his success on only one of his claims weigh strongly in favor of substantially reducing his fee request. It posits that the court should reduce the requested amount by 75%—the same reduction taken in *Picou v. City of Jackson, Mississippi*, 91 Fed. Appx. 340, 341 (5th Cir. 2004) (per curiam), and *Dodge v. Hunt Petroleum Corp.*, 174 F.Supp.2d 505, 510 (N.D. Tex. 2001) (Lindsay, J.)—to accurately reflect Benton's limited success.

Benton contends that the lodestar should not be adjusted at all. He maintains that, under recent Fifth Circuit authority, the court can award full or substantial attorney's fees even though he only recovered nominal damages. Benton posits that he engaged in a sustained effort to expose unlawful employer retaliation that occurred over a period of years, not only against him but against other EPA employees, and that by obtaining a favorable jury verdict against the EPA, a federal agency, he has conferred a significant benefit on other federal employees and management officials who want to commit themselves to complying with Title VII.

-13-

2

There is a strong presumption that lodestar amount represents a reasonable fee. *See Perdue*, 559 U.S. at 553-54; *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). Although the court can adjust the lodestar upward or downward after assessing the properly-considered *Johnson* factors, the party seeking the adjustment must establish that an adjustment is warranted. *See La. Power & Light Co.*, 50 F.3d at 329 (citing *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 413 (2d Cir. 1989)). Many of the *Johnson* factors are "presumably fully reflected in the lodestar amount," so such modifications are proper only in certain "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings." *Del. Valley Citizens' Council*, 478 U.S. at 565 (quoting *Blum*, 465 U.S. at 898-901).

"There is no precise formula for courts to use in reducing the lodestar amount to reflect a plaintiff's limited success." *Williams*, 2013 WL 1875055, at *6 (citing *Wright v. Blythe-Nelson*, 2004 WL 2870082, at *8 (N.D. Tex. Dec. 13, 2004) (Fitzwater, J.)). When a plaintiff obtains "excellent results, his attorney[s] should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation[.]" *Hensley*, 461 U.S. at 435. But where a plaintiff "achieve[s] only partial or limited success," granting full compensation may be excessive, and the court may reduce the attorney's fees award to account for the limited success. *Id.* at 436.

In this case, the court in calculating the lodestar has already accounted for Benton's lack of success on his claims under the ADEA and the Whistleblower Protection Act. In the

context of this case, it would amount to double counting to reduce the fee award further on the same basis under the eighth *Johnson* factor.  The court must instead focus on the fact that Benton only recovered nominal damages of $1 rather than a greater amount of compensatory damages.

Although Benton recovered only nominal damages, in the civil rights context, "[s]uccess is not measured merely based on the recovery of monetary damages, as 'a civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards.'" *Norsworthy v. Nguyen Consulting & Servs., Inc.*, ___ Fed. Appx. ___, 2014 WL 3338795, at *1 (5th Cir. July 9, 2014) (per curiam) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)).  Because Benton was successful in establishing that the EPA retaliated against him, in violation of Title VII, the court concludes that Benton has secured an important social benefit: establishing that the EPA, an agency of the federal government, unlawfully retaliated against one of its attorney employees after he complained of race discrimination.  Such a verdict shines a light on the fact that agencies of the federal government must adhere to applicable anti-retaliation laws enacted by Congress.

Accordingly, the court holds that the lodestar amount should not be adjusted downward, as the EPA requests.

IV

The court turns now to Benton's request for an award of nontaxable expenses.

A

The court entered the judgment in this case on June 24, 2014.  In *Benton I* the court stated that Benton could "apply for an award of attorney's fees, related nontaxable expenses, and taxable costs under the procedures, *and in accordance with the deadlines*, prescribed by Rule 54(d)."  *Benton I*, 2014 WL 2862309, at *9 n.7 (emphasis added).  The deadline prescribed by Rule 54(d) for filing his fee application was July 8, 2014.  *See* Rule 54(d) ("the motion must . . . (i) be filed no later than 14 days after the entry of judgment").  Benton filed his motion for attorney's fees and nontaxable court costs ("Initial Motion") on July 8, 2014, seeking "an estimated $131.00" in certified return mailings and costs in connection with Benton's PACER account "in excess of over $125.00."  Initial Motion 2.

On July 28, 2014, without obtaining leave of court, Benton filed a supplemental motion for attorney's fees and nontaxable court costs ("Supplemental Motion").  In the Supplemental Motion, Benton stated that, after filing the Initial Motion, he located or received additional nontaxable court cost documentation, and he requested the additional sums of $12.42 in certified return receipt mailings, $138.22 in printing costs, and $188.26 for his PACER account.  Benton also requested the total sum of $1,432.72 for Lexis Nexis charges for the period July 2012 through February 2013.  Given the apparent tardiness of the Supplemental Motion, the court ordered that no response was necessary unless the court determined that the Supplemental Motion was timely.

-16-

The following day, the EPA filed its response to Benton's Initial Motion.  It did not object to Benton's request, in his Initial Motion for certified mailing costs, but requested that the court deny Benton's request for PACER fees because Benton presented his request using an estimated figure backed by no supporting documentation.

On August 5, 2014, Benton filed a second supplemental motion for attorney's fees and nontaxable court costs ("Second Supplemental Motion"), seeking Lexis Nexis costs of $179.07 per month from April 2012 through March 2013 and $188.68 per month from April 2013 through April 2014.  Given the apparent tardiness of the Second Supplemental Motion, the court ordered that no response was necessary unless the court determined that the Second Supplemental Motion was timely.

B

Although Benton's Initial Motion was filed within Rule 54(d)'s 14-day deadline, his Supplemental Motion and Second Supplemental Motion are untimely.  "[A] party's failure to file a timely motion for attorney fees under Rule 54(d)(2) serves as a waiver of the request." *RFAR Grp., LLC v. Epiar, Inc.*, 2013 WL 1743880, at *1 (N.D. Tex. Jan. 9, 2013) (Stickney, J.) (citing *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 766 (5th Cir. 1996)), *rec. adopted*, 2013 WL 1748619 (N.D. Tex. Apr. 23, 2013) (Lindsay, J.).  Although courts sometimes excuse the late filing of an attorney's fees motion when the tardiness is caused by excusable neglect, *see, e.g., Texas Manufactured Housing Ass'n v. City of Nederland*, 101 F.3d 1095, 1107 (5th Cir. 1996), Benton neither sought permission to file his untimely Supplemental Motion or Second Supplemental Motion nor does he state that his

-17-

tardiness is the result of excusable neglect. Accordingly, the court declines to consider the nontaxable expenses that Benton requests for the first time in his Supplemental Motion and Second Supplemental Motion (i.e., his requests for additional certified return mailing costs, printing costs, or Lexis Nexis costs).

Because the EPA does not challenge Benton's request for $131.10[8] in certified return mailing costs, the court awards this amount. The court also awards $136.72[9] in PACER costs. Although the court will not consider the request for expenses made for the first time in Benton's untimely Supplemental Motion or Second Supplemental Motion, it will consider the evidence included in Benton's Supplemental Motion that substantiates his request for PACER expenses because Benton requested these expenses in his Initial Motion, and, had he submitted his substantiating evidence in his reply brief (rather than in his Supplemental Motion) in reply to the EPA's response, the court would have considered this evidence.

Accordingly, the court awards Benton nontaxable expenses in the total amount of $267.82.

---

[8]Benton requests $131.10 in certified mailing costs in the itemized list attached to his motion.

[9]Benton has submitted PACER bills for the following dates and amounts: (1) $21.90 on April 8, 2013; (2) $17.50 on July 3, 2013; (3) $27.80 on April 7, 2014; and (4) $69.52 on April 3, 2012.

V

In sum, the court finds that the reasonable fees for McInnis and Tanner are $300 and $100, respectively.  Starting from the total requested hours of 55.05 for McInnis and 111.2 for Tanner, the court reduces the hours of each attorney by 30%, resulting in 38.54 hours for McInnis (55.05 - 16.51 = 38.54) and 77.84 hours for Tanner (111.2 - 33.36 = 77.84).  The court multiplies these hours by the reasonable hourly rates, resulting in a lodestar of $11,562.00 for McInnis ($300 per hour x 38.54 hours) and $7,784.00 for Tanner ($100 per hour x 77.84 hours), for total attorney's fees of $19,346.00.  The court awards $267.82 in nontaxable expenses.

*    *    *

Accordingly, for the reasons explained, the court awards Benton $19,346.00 in attorney's fees and $267.82 in nontaxable expenses, and it denies his motion for a new trial.

**SO ORDERED**.

October 14, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE